Staples, J.
The first error assigned relates to the-pleadings. It is objected that the bill is multifarious in uniting as plaintiffs the heirs and representatives of' ¥m. Parrish, and the heirs and representatives of Mark Parrish, having separate and distinct interests. It appears by the powers of attorney filed as exhibits with the bill, that all the plaintiffs claim as heirs of Mark Parrish. A part of them also claim as heirs of' ¥m. Parrish. All are interested in one subject of controversy, though all are not interested in the entire subject of controversy.
Had the plaintiffs, who are descendants of 'William, Parrish, instituted suit against -the defendants, to recover in that character, they clearly would have had the right to embrace in such suit their claim for what - was due them as representatives of Mark Parrish’s estate. The defendants could not object, because they acted under a joint letter of attorney relating to both, estates.
Had the descendants of Mark Parrish instituted suit-to recover what was due them in that character, they would have been required to make parties the heirs of" Wm. Parrish, who were jointly interested with them. *679 in the funds of Mark Parrish’s estate. And in each case the same inquiries would have been proper—the same accounts necessary, in order to a final and com píete adjudication of the rights of all the parties. After much unnecessary delay and confusion, the re-suit would have been a consolidation of the two causes.
The courts have found it impracticable to lay down any fixed rule in regard to the incorporation of separate and distinct matters in the same bill. They seek rather to ascertain what is just and convenient in the particular case, than to declare any general rule, applicable to all cases. In Knye v. Moore, 1 Sim. & Stu R. 61, a mother joined with her children as co-plaintiffs in a bill, the object of which was to establish two distinct claims, arising under separate instruments; the mother claiming an annuity under one, and the mother and children claiming the benefit of a settlement under the other. It was held the bill was not multifarious, upon the ground that the whole case of the mother being properly the subject of one bill, the suit did not become multifarious, because all the plaintiffs were not interested to the same extent.
In Story Eq. Plea, see. 271, a, the rule is thus expressed: “ So, it is not indispensable that all the parties should have an interest in all the matters contained in the suit; it will be sufficient if each has an interest in some matters in the. suit, and they are connected with the others.” In this case it was proper and convenient, in the administration of justice, to litigate and dispose of all the matters in controversy in one suit. It is difficult to perceive how the defendant can he prejudiced by this mode of proceeding. If he is subjected to any inconvenience or embarrassment in making his defence, he has failed to disclose or even to suggest it. I think, therefore, the court did right in overruling this objection.
*680 The second ground of error is, that the ■ plaintiffs have ample remedy by action at law.
It is true that the mere relation of principal and agent does not justify the interposition of a court of equity where the principal has complete and adequate redress by suit in the common law courts. But this relation being generally one of great personal confidence and trust, the principal is seldom able to ascertain the true state of the accounts, the disposition of his property, and the profits realized, except by an appeal to the conscience of the agent, and an examination of his hooks and vouchers. Upon well-settled principles, the court having acquired jurisdiction by means of a bill of discovery, will finally adjudicate the matters in controversy and grant such relief as may be just and proper.
In this case the defendant Segar, more than twelve years ago, was appointed plaintiff’s agent to receive and sell the scrip, to which they were entitled from the government of the United States. So far as this record discloses, he has not only retained the funds during all this period, hut he has failed to give his principals any information touching the execution of the trust confided to him; whether he had received the scrip, and if so, what disposition he has made of it, and upon what terms he sold it. Upon all these points the plaintiffs may properly invoke the aid of a court of equity to compel a full and explicit discovery of all matters appertaining to his execution of the agencyl The jurisdiction of a court of equity in such cases is not taken away, because the statutes now authorize the examination of the adverse party as a witness.
The plaintiffs were also entitled to resort to a court of equity to avoid multiplicity of actions; hut it is unnecessary to enlarge upon this view, as the equitable jurisdiction is clear upon the first ground.
*681 The third ground of error assigned is, that the court improperly charged the defendant Segar with one •dollar and twenty-five cents as the price per acre the scrip.
Segar, in his answer, states, and his deposition is to the same effect, that he sold the scrip at 91 cents per acre. There is not a scintilla of evidence in the case •contradictory of these statements. It is true that the defendant Fant, in his answer, states that he paid Se-gar between §1 and $1 20 per acre; but he does not profess to be exact or positive. Besides upon well settled principles, the answer of Fant is, in no view of the case, evidence against Segar. If the plaintiffs desired the benefit of ‘Fant’s statement of the transaction, it was their right, as it was their duty, to take his •deposition, and thereby afford his co-defendant an opportunity of cross-examination.
The fourth ground of error is the refusal of the •court to allow the defendant Segar the compensation •of one-third of the scrip, to which he was entitled under the contract. 'What was the contract? Hot merely, I imagine, to recover the scrip and sell it, but to pay over the proceeds to his principals. It may be fairly presumed they were willing to allow him a compensation of one-third in consideration of receiving the other two-thirds in a reasonable time. The defendant has, however, not accounted for any part of the funds. "When called upon to say what he had done with the plaintiffs’ money, he repels the enquiry somewhat indignantly, by saying that he had disposed of it ■according to his sovereign will and pleasure. His subsequent explanation, “that he had disposed of the money as any gentleman believing himself solvent would use funds under his control,” does not materially improve his claim to compensation.
However solvent agents and trustees may be, or However honest may be their intentions, if they delibe *682 rately retain trust funds in their own hands, appropria^e them to their own private use, and refuse or fail for years to render any account to their principals,. should he held to forfeit all claim for compensation. Any other rule is a premium for negligence and an encouragement to persons occupying relations of" trust and confidence, to retain money not their own.
The fifth ground of error is the failure of the Circuit court to allow any credit for the payments made-by the defendant Segar. His answer states that h& has paid some of the parties, but no receipts or vouchers are filed, or evidence adduced establishing the existence of such payments. I think the court did noir err in disregarding this claim.
Sixth assignment, that the court erred in rendering-a decree against the defendant Rant. The plaintiffs, claim that Rant was their substituted agent, and as. such responsible to them. To sustain this view they rely upon letters of attorney to Segar, and Segar’s appointment of Rant as agent by substitution. On the other hand Rant insists that the firm of Sweeney, Rittenhouse, Fant & Co., of which he was a member, purchased the scrip from Segar, and settled with him in full for the purchase money; that the sale wns a fair and Iona fide one, made in the usual course of trade, and at a fair market rate; that his own name was substituted as the attorney because he was the member of" the firm who usually attended to such business; that as the scrip had not been issued the substitution was necessary to enable him, as the purchaser and owner, to draw the scrip from the general land office, according to a well known usage and custom of the department at Washington. This statement is fully sustained by the testimony of the defendant Segar.
The plaintiffs have adduced no evidence contradicting the statement, either as regards the purchase of" the scrip by Rant, or the usage at Washington. Such. *683 purchase and such usage must, therefore, he regarded as established facts in the case. Now, if Fant is es-topped by reason of this substitution, to deny the agency, it is clear the departments at Washington have adopted a custom which converts every purchaser of scrip, not already issued, into an agent; and imposes upon him all the responsibilities and duties incident to that relation. The injustice of this proceeding is too manifest to require comment. The agent informs the purchaser of the scrip that this substitution is the regular and recognized mode of effecting the sale: the purchaser acts upon the information thus imparted, accepts the power of attorney, and nominally the position of substituted agent. Is the principal to he permitted to repudiate the acts and declarations of his agent, upon the faith of which the purchaser has acted, and to insist that the purchaser occupies the double relation of purchaser and agent ?
The plaintiffs must be presumed to know the usage at Washington, and in executing the power of attorney in the mode observed, they no doubt intended to conform to that usage. It is manifestly unjust for them now to insist that they were ignorant of it; that they did not intend their business should he conducted according to the well established mode universally recognized ; and the purchaser must at his peril see to it that their own agent properly executed his trust. If Fant bona fide purchased and paid for the scrip, what interest have the plaintiffs in the subsequent arrangements between him and Segar, in no manner affecting their interests. It was a transaction between Segar and Fant, and not between the plaintiffs and Fant. As between the plaintiffs and Segar, there was nothing to he done hut the payment of the money. The failure to receive it only tends to shew that the plaintiffs were unfortunate in the selection of an agent. The case would he very.- different if it appeared there was a *684 fraudulent combination between Segar and Fant. In absence of evidence establishing that fact, I think is clear no' decree should have been rendered against The doctrine of estoppel, so elaborately discussed by the counsel for the appellee, has, in my judgment, no application to the case.
The other judges concurred in the opinion of Staples, J.
The decree was as follows :
The court is of opinion, for reasons stated in writing and filed with the record, that the Circuit court erred in not dismissing the bill as to the defendant Hamilton G-. Fant. The court is further of opinion, that the Circuit court erred in charging the defendant Joseph Segar with one dollar and twenty-five cents per acre as ■the value of the scrip in the bill and proceedings mentioned, instead of ninety-one cents per acre, with which he is properly chargeable: and that there is no other error in said decree. It is therefore decreed and ■ordered, that the said decree be reversed and annulled, .so far as it is herein declared erroneous; and in all other respects affirmed. And it is further decreed and ordered, that the appellee Martha Skinner, executrix ■of Thomas Skinner, deceased, out of the assets in her hands to be administered, and the other appellees out of their own estates, pay to the appellants their costs by them expended in the prosecution of their appeal here. And this court, proceeding to render such decree as the said Circuit court ought to have rendered, it is further decreed and ordered, that the bill of the complainants be dismissed as to the said appellee Fant; ••and that they pay to him, that is to say, the said Mar■tha Skinner, executrix of Thomas Skinner, out of the , assets in her hands to be administered, and the other ■appellees out of their own estates, his costs by him expended about his defence in the said Circuit court.
*685 And it is farther decreed and ordered, that the appellees recover against the appellant Segar the sum of four thousand eight hundred and fifty-three T8^ dol lars, with interest thereon from the 31st day of March, 1858, till paid; and their costs by them about their said suit in the said Circuit court expended.
Which is ordered to be certified to the Chancery court for the city of Richmond.
Decree reversed.